**John H. WRIGHT, Appellant,**

v.

**EXCALIBUR INSURANCE COMPANY, Appellee.**

**No. 17899.**

Court of Civil Appeals of Texas, Dallas.

July 27, 1972.

James C. Barber, Mullinax, Wells, Mauzy & Baab, Inc., Dallas, for appellant.

George W. Bramblett, Akin, Vial, Hamilton, Koch & Tubb, Dallas, for appellee.

BATEMAN, Justice.

In this workmen's compensation case the appellant John H. Wright claimed total and permanent incapacity because of an injury to his lower back which produced a conversion reaction or hysteria. Based upon a jury verdict, the trial court rendered judgment in favor of appellant for $343. Complaining of the inadequacy of this award, he appeals.

The sole ultimate question is the extent and duration of appellant's disability. It was shown that in 1953 he suffered accidental injury to his head, an arm and an eye, that in 1967 he sustained an injury to his back necessitating removal of a disc, and that on May 29, 1970 he again injured his lower back, giving rise to the present claim. There was expert testimony tend-

ing to show that as a result of each of these injuries he suffered an involuntary conversion reaction. A psychiatrist testifying for appellant explained that this was a subconscious mental condition based upon appellant's anxiety over what he feared to be the loss of his most valuable asset; i. e., his ability to work; that he had temporarily lost it when his disc was surgically removed in 1967, but had regained it, and that when he had another injury to his back in 1970, though of a relatively minor nature, it made him very fearful that he would not be able to hold his job and that this anxiety had developed into "a full-blown neurosis," which was itself disabling. (See Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W.2d 345 (1948); Bailey v. American General Ins. Co., 154 Tex. 430, 279 S.W.2d 315 (1955).) Appellee agrees that it was disabling and, as stated, the only dispute is as to how disabling it was and the duration thereof.

The jury found that appellant was totally disabled from May 29, 1970, the date of his injury, until August 27, 1970, but suffered no partial incapacity thereafter; that appellant's incapacity was not caused solely by pre-existing conditions; that appellant's 1967 injury contributed to the incapacity so found, to the extent of 15 per cent, but that the 1953 injury had not contributed thereto.

We shall first discuss appellant's points of error Nos. 6 through 14 wherein he complains of the judgment based on the jury's findings, in answer to Special Issues 7, 8 and 9, that appellant's total incapacity was temporary and ended on August 27, 1970, and that he suffered no partial incapacity. Appellant claims that there was no evidence, and in any event insufficient evidence, to support these findings, and that each of them was against the great weight and preponderance of the evidence. We have carefully reviewed the entire record and find no merit in any of these points.

The appellee offered the testimony of Dr. Stephen Weisz, a psychiatrist, who said that he was asked to see appellant by Dr. Herrick, the orthopedic surgeon who had removed appellant's ruptured disc in 1967. Dr. Weisz first saw appellant on March 7, 1968, and at that time conducted a neurological examination of him. After describing the examination in detail, Dr. Weisz expressed the opinion that appellant suffered from "a conversion reaction, that is, non-organic lesion of the left leg, including the sensory changes * * *"; that there are many factors to indicate the patient's ability to recover from a conversion reaction and return to some type of employment, some of which are purely personal, and some of which are not medical factors, like sympathy, attention and compensation, which is called a "secondary gain" reaction; that the presence of a lawsuit for compensation is many times a factor; that conversion reaction involves primarily the voluntary nervous system, resulting many times in paralysis and loss of sensation. When he saw appellant in 1968 the condition was obviously temporary because, although he had originally complained of a paralyzed left leg, he walked out of the hospital; that he could not find any organic lesion or damage to the central nervous system as a result of the conversion reaction. He also expressed the opinion that appellant would have about ten to fifteen per cent disability on account of his low back condition for which there had been surgery, which would be permanent because after a back injury a certain amount of instability remains.

Dr. Weisz did not see appellant again until June 16, 1970, when he was told that a week before appellant had lifted a tire and experienced severe pain in the back. He conducted another neurological examination and again made the diagnosis of a conversion reaction. When asked whether he had determined a factor of "secondary gain" he said: "Well, I knew then that he had a claim pending." He said further that he believed this was a factor in appellant's condition and his ability to recover; that in his opinion the condition was temporary, but that other factors might prolong it. He then said that,

considering appellant's present condition and his past medical history, he thought he had a "pattern of conversion reaction or history," and that the 1970 episode "was really just a repetition of the 1968 episode with some variation." He also explained that a conversion reaction produces symptoms which are totally involuntary or subconscious, being controlled by the subconscious mind; that a conversion symptom results from a pathological solution of a psychic conflict, the issues of which are outside of the patient's awareness.

Dr. Weisz further stated on cross-examination that he did not mean to imply in any way that appellant was malingering or faking; that he presumes that the symptoms a conversion reaction patient feels are real to him, and just as real as if he had a ruptured disc. He further stated that in a compensation case compensation has to be considered as a primary factor; that appellant sustained a relatively minor injury in 1970, but that he claims that he cannot do anything, which is a psychiatric result or "secondary gain."

Dr. Samuel E. Neely, a psychiatrist called as a witness by appellant, testified that he examined appellant about three weeks prior to the trial, and came to the conclusion that appellant had a conversion reaction, or conversion neurosis, with "marked secondary gain." He also said that appellant's symptoms were as real to him as if he had an actual ruptured disc in his back; that in his opinion appellant was not malingering and was totally and permanently disabled; that he does not think settling the litigation will solve his problems.

■ The parties are in agreement that the 1970 injury was relatively minor and probably not capable of causing prolonged incapacity except for the conversion reaction, which both parties recognize as a genuine producing cause of incapacity. The only disagreement concerns the extent and duration thereof. One expert witness was of the opinion that the incapacity is total and permanent, while the other expressed the opinion that it was only temporary. The jury had the right to believe all, or part, or none of the testimony of either witness. We hold, therefore, that the findings are supported by evidence of probative force and are not against the great weight and preponderance of the evidence. Accordingly, Points Nos. 6–14 are overruled.

In appellant's first four points of error he complains that the trial court erred in admitting evidence of the 1953 injuries because no proper predicate had been laid and because the injuries were too remote. He also complains of the admission of evidence of the 1953 and 1967 claims, suits and settlements as being irrelevant, immaterial and prejudicial, and also complains of the reading of portions of a petition allegedly filed by appellant against Travelers Insurance Company to recover compensation for his 1953 injuries.

Appellee says its reason for developing the testimony concerning the 1953 injuries was, not to try to prove that those physical injuries contributed to the 1970 back injury, but that the psychiatric symptoms he suffered after the 1953 injuries were similar to those he suffered following the 1967 and the 1970 injuries, and that the 1953 neurosis contributed to his present psychiatric condition. Dr. Weisz testified that such knowledge would be important to him in his diagnosis, and Dr. Neely testified that those 1953 injuries laid the groundwork for appellant's future difficulties.

■ Appellant objected to the introduction and reading to the jury of certain portions of the 1953 petition, principally upon two grounds; viz., that it was not shown that the 1953 injury was compensable, and because it was not shown that the author of the petition had been employed by appellant and authorized to file it. If the evidence was offered to prove, under Tex.Rev.Civ.Stat.Ann. art. 8306, sec. 12c (1967), that a prior general injury or the effects thereof contributed to

the present condition of incapacity, it was necessary to show that the prior injury was a compensable one. St. Paul Fire & Marine Ins. Co. v. Murphree, 163 Tex. 534, 357 S.W.2d 744, 749 (1962); Alvarez v. Texas Employers' Ins. Ass'n, 450 S.W.2d 114, 116 (Tex.Civ.App., San Antonio 1970, writ ref'd n. r. e.). Moreover, unless and until it was shown that the attorney signing the petition was acting on behalf of appellant with authority, expressed or implied, to do so, the statements in the petition were hearsay. Garcia v. Sky Climber, Inc., 470 S.W.2d 261, 266 (Tex.Civ.App., Houston 1st Dist.1971, writ ref'd n. r. e.).

■ In our opinion, appellee introduced sufficient evidence to establish, at least prima facie, that the 1953 injury was compensable and that the attorney had at least implied authority to file the petition. Appellant offered no evidence to the contrary. However, he did prove without dispute that he had done heavy manual labor for approximately fifteen years between 1953 and 1967, and the jury quite understandably declined to hold that the 1953 injuries contributed to the incapacity complained of in this suit.

Appellant argues, however, that the admission of the evidence of the 1953 and 1967 injuries, compounded by repeated questions concerning whether appellant had filed claims, employed attorneys, filed lawsuits and made settlements of those claims, placed him in an unfavorable light with the jury by inferring that he was a chronic claimant and malingerer, and that this probably influenced the jury to determine the rather short duration of his total disability.

He relies on Brinkley v. Liberty Mutual Ins. Co., 331 S.W.2d 423 (Tex.Civ.App., Texarkana 1959, no writ), wherein it was held that the insurer did not have the right, and that the trial court erred in permitting it, to establish that the claimant had previously had twelve workmen's compensation claims which had been settled

for a total of $10,255.71; that although Sec. 12c of Art. 8306, Vernon's Tex.Rev. Civ.Stat.Ann., provides that previous injuries may be pled and proved, it does not authorize proof of the settlements made of previous claims. In that case, as in this, the jury found only a few weeks of total disability, no partial disability and that the previous injuries did not contribute to the incapacity caused by the subsequent injury involved in the suit. However, that case is distinguishable from this one. In *Brinkley* the principal emphasis was on the amounts paid in the settlement of the previous claims, and no reasonable excuse was given for proving the facts of settlements and amounts paid, it being obvious that the purpose thereof was to prejudice the jury by creating the belief that the claimant had probably exaggerated his disability and feigned his symptoms.

■ In the case at bar, however, appellee made no effort to establish the amounts paid to the claimant in settlement, and at no time took the position that appellant was a malingerer or was exaggerating his injuries. Appellee's theory, supported by the opinion testimony of its expert witness, was that an injured employee who suffered a conversion reaction or neurosis related to an actual injury would often quickly recover once his claim for that injury had been settled. Appellee was endeavoring to show a pattern of injury, followed by employment of an attorney and a claim for damages, followed by settlement of that claim, followed by complete recovery. There was evidence to support the theory that this had occurred in the case of both the 1953 and the 1967 injuries, and may have been persuasive to the jury that appellant would soon recover from the injuries in the suit at bar upon the termination of this litigation. The jury had a right to, and apparently did, follow this theory in its verdict. We see no reversible error in these rulings of the trial court which permitted appellee to develop the theory. Appellant's first four points of error are overruled.

By his fifth point of error appellant says the trial court erred in admitting in evidence a portion of Parkland Hospital records for 1971, being a notation on appellant's chart stating that he had stepped in a hole in his yard "about a week ago" and had reinjured himself, although he had been feeling better up to that time. Appellant argues that since the stepping in a hole could not have been a "compensable injury" the evidence was irrelevant to any material issue in the case. We do not agree with appellant. No issue was submitted to the jury as to whether the incident of stepping in the hole contributed to the injury of 1970, and appellee did not, and does not now, so contend. The record was offered only to show that appellant had stated that he had been doing much better prior to this incident. This was admissible as an admission by appellant. Skillern & Sons, Inc. v. Rosen, 359 S.W.2d 298, 306 (Tex.Sup.1962); McCormick & Ray, Texas Law of Evidence, Vol. 2 § 1262. The fifth point is overruled.

No reversible error having been shown, the judgment is affirmed.