SERVICE LLOYDS INSURANCE COMPANY, Appellant,

v.

Rory Dell MARTIN, Appellee.

No. 05–92–01405–CV.

Court of Appeals of Texas, Dallas.

May 13, 1993.

Dr. Xiques, Martin obtained additional treatments at Parkland Memorial Hospital.

Robert B. Galbreath and D. Bradley Dixon, Dallas, for appellant.

Wayne R. Shahan, Dallas, for appellee.

Before THOMAS, MALONEY, and BARBER, JJ.

## OPINION

THOMAS, Justice.

In this workers' compensation case, Service Lloyds Insurance Company (the carrier) appeals from a judgment rendered in favor of Rory Dell Martin. In three points of error, the carrier challenges the factual sufficiency of the evidence to support the jury's findings on the elements of Martin's claim. In three additional points of error, the carrier complains that the trial court erred in excluding certain testimonial and documentary evidence that related to Martin's credibility and his practice of filing claims for injuries. We overrule all points of error. Accordingly, we affirm the trial court's judgment.

## FACTUAL BACKGROUND

Martin worked in various unskilled laborer positions. At the time of the incident in question, he was working as a porter at a car dealership. Martin's duties included mowing the lawn, washing cars, and cleaning buildings. On October 19, 1989, he was instructed to mow the lawn. According to Martin, he injured his left shoulder while trying to start the lawn mower. When Martin tried to get medical treatment on the day of the incident, the hospital refused to treat him after being informed by the employer that this was not an on-the-job injury. Martin returned to work and was able to perform his duties.

Martin received the first medical treatment for his shoulder on October 25, 1989, the day that he was fired from the dealership. At that time, he began a treatment program with Dr. Pablo Xiques. Martin received a total of forty-seven treatments from Dr. Xiques. After being released by

## CONTESTED ELEMENTS OF THE WORKERS' COMPENSATION CLAIM AND THE EVIDENCE ADDUCED AT TRIAL

In the first three points of error, the carrier challenges the factual sufficiency of the evidence to support the jury's findings that Martin was injured on the date alleged in the scope of his employment and that he suffered permanent partial incapacity as a result of the injury.

### A. Standard of Review

In reviewing factual-sufficiency points, we consider all of the evidence including any evidence contrary to the judgment. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989); *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986). This Court must consider, weigh, and compare all of the evidence in the record pertinent to the issue under consideration. *Sosa v. City of Balch Springs*, 772 S.W.2d 71, 72 (Tex.1989) (per curiam); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986). After we have considered and weighed all of the evidence, we may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam).

In making its findings, the jury weighs the evidence, assesses the credibility of witnesses, and resolves conflicts and inconsistencies. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986). The jurors are the judges of the facts proved and of the reasonable inferences to be drawn therefrom. *Lockley v. Page*, 142 Tex. 594, 598, 180 S.W.2d 616, 618 (1944). We are mindful that this Court is not a fact finder, and we cannot substitute our judgment for that of the jury, even if a different finding could be reached on the evidence. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

## B. Required Elements to Sustain a Claim

A claimant must establish his entitlement to benefits under the Workers' Compensation Act (the Act).[1] *Sifuentes v. Texas Employers' Ins. Ass'n*, 754 S.W.2d 784, 786 (Tex.App.—Dallas 1988, no writ). It is the claimant's burden to establish that an injury occurred in the course of employment. *Texas Employers' Ins. Ass'n v. Page*, 553 S.W.2d 98, 99 (Tex.1977). The claimant also must establish that the injury produced total or partial disability. *Garcia v. Aetna Casualty & Sur. Co.*, 542 S.W.2d 477, 479 (Tex.Civ.App.—Tyler 1976, no writ). The claimant also must prove the duration of any incapacity. *Texas Employers' Ins. Ass'n v. Thames*, 236 S.W.2d 203, 205 (Tex.Civ.App.—Fort Worth 1951, writ ref'd).

## C. The Carrier's Contentions

The thrust of the carrier's argument is that there was no compensable on-the-job injury on the date alleged. In support of this position, the carrier argues that Martin had a history of left shoulder ailments. Further, the carrier points out that Martin reinjured his shoulder a few weeks before this incident, which necessitated his wearing a sling. The carrier contends that assuming there was some type of injury on the date in question, Martin did not suffer any change in condition because there was no reduction in his earning capacity.

The carrier further asserts that the testimony of Dr. Xiques is insufficient to support the jury's finding of a permanent partial incapacity. In support of this argument, the carrier points out that the diagnosis and treatment was based upon an inaccurate patient history and no objective tests support the doctor's opinions. Finally, the carrier claims that Martin's testimony is not sufficient to support the verdict.

## D. Preexisting Injury

The fact that a claimant has a preexisting injury, which enhances or aggravates the injury complained of, does not of itself defeat a right of recovery under the Act. *See Page*, 553 S.W.2d at 100; *Sowell v. Travelers Ins. Co.*, 374 S.W.2d 412, 414 (Tex.1963). In order to defeat a claim because of a preexisting injury, the carrier had to show that the prior injury was the sole cause of Martin's present incapacity. *Page*, 553 S.W.2d at 100.

## E. Partial Incapacity

Partial incapacity means that a person is disqualified from performing the usual tasks of his or her job, although still capable of performing labor of a less remunerative class than before the injury. Thus, the person suffers a reduction in earning capacity. *Texas Employers' Ins. Ass'n v. Lara*, 711 S.W.2d 224, 225 (Tex. 1986); 75 Tex.Jur.3d *Work Injury Compensation* § 254 (1991). The purpose of the Act is to compensate an injured employee, not for the loss of earning nor for the injury itself, but for loss of earning capacity. *Employers Reinsurance Corp. v. Holland*, 162 Tex. 394, 396, 347 S.W.2d 605, 606 (1961).

Generally, the duration and extent of an incapacity resulting from an injury is at best a reasonable estimate that must be determined by a jury from all pertinent facts before it. *Texas Employers' Ins. Ass'n v. Washington*, 437 S.W.2d 340, 346 (Tex.Civ.App.—Dallas 1969, writ ref'd n.r.e.). The issue as to incapacity may be established by the testimony of the worker alone. *Reina v. General Accident Fire & Life Assurance*, 611 S.W.2d 415, 417 (Tex.1981).

Evidence that a claimant is working and earning money does not conclusively establish that a worker's disability is neither total nor permanent; it is merely factual evidence to be taken into consideration by the jury along with the other evidence in the case. *See Texas Employers' Ins. Ass'n v. Draper*, 658 S.W.2d 202, 207 (Tex.App.—Houston [1st Dist.] 1983,

---

1. Formerly, Title 130 Workmen's Compensation Law, Tex.Rev.Civ.Stat.Ann. art. 8306, Act of April 16, 1913, 33rd Leg., R.S., ch. 179 Tex.Gen.Law 16, *repealed by* Act of 71st Leg., 2nd C.S., ch. 1, § 16.01(7) to (9), 1989 Tex.Gen.Laws, (current version at Tex.Rev.Civ.Stat.Ann. art. 8308 [Vernon Pamph. 1992] ).

no writ); *Trinity Universal Ins. Co. v. Scott*, 342 S.W.2d 348, 349–50 (Tex.Civ. App.—Fort Worth 1961, writ ref'd n.r.e.).

### F. *Application of Facts to Law*

The following summary represents the evidence in favor of and contrary to the jury's verdict.

- Martin's lengthy history of medical problems relative to his left shoulder began in 1985 as a result of an accident. There were a number of instances in which Martin dislocated his shoulder.
- In 1988, Martin underwent surgery on his left shoulder. The shoulder had not fully recovered from the surgery at the time of the October 19 incident.
- During the first week of October 1989, Martin was involved in a fight where he again sustained an injury to his left shoulder. As a result of this altercation, he began wearing the arm in a sling for support.
- Because of the sling, Martin's job duties were limited to those which could be performed with his right hand.[2] After the October 19 incident, Martin could perform these same duties. In fact, Martin performed his assigned duties until he was fired on October 25.
- The day Martin was fired, he went to see Dr. Xiques.[3]
- Before the October 19 incident, Martin worked forty to fifty hours per week. His salary was five dollars per hour with time-and-a-half for overtime.
- Before the incident, Martin often worked on the weekends for his supervisor's father. He decided not to do this after October 19 because he thought that it would work against him in this lawsuit.
- After being released by Dr. Xiques, Martin held only two jobs. The first was a laborer position with Gifford–Hill for two and one-half months. The second was a position with a temporary agency where he worked in a warehouse. The shoulder injury did not have anything to do with Martin's termination from these positions.
- Martin falsified his job application with Gifford–Hill when he indicated that he had never been injured on the job. He did this because he needed money and thus wanted the job.
- Martin continued to experience pain, and his shoulder continued to "pop out of place." However, by the time of the trial, Martin's arm felt better than it did before the October 19 incident.
- Dr. Xiques determined that Martin was incapable of working from October 25 until March 12, 1990.
- The doctor's diagnosis was based upon the medical history he received, his physical examination of the shoulder, and the observation of Martin's progress under the treatment plan. No objective diagnostic tests were performed.
- Martin did not provide a complete medical history. On the first visit, he told the doctor that he had injured his shoulder trying to start a lawn mower at his job. Specifically Dr. Xiques was not told about: (i) previous shoulder dislocations; (ii) Martin's various hospital admissions; (iii) the 1988 surgery; (iv) Martin's injury that occurred in early October; and (v) the fact that Martin's left arm could not be used before the October 19 incident.
- If Dr. Xiques had known the above factors, they would have affected his diagnosis and treatment.
- Assuming that Martin suffered from a preexisting condition, the injury on October 19 incited, accelerated, aggravated, or precipitated the condition for which he was seeking medical care.
- Martin suffered a fifteen percent residual disability in his left shoulder, and this disability is a permanent condition.

---

**2.** Martin wore the sling on the date in question. He, however, had removed the sling in order to mow the yard and because he wanted to ease some of the stiffness in his left arm.

**3.** Martin's attorney referred him to Dr. Xiques.

The nature and extent of Martin's prior shoulder injuries were fully before the jury. Further, the jury was well aware of the fact that Martin did not provide Dr. Xiques with a complete and accurate medical history. The doctor, however, provided expert-opinion testimony concerning the extent and duration of Martin's injuries. The carrier did not provide any controverting medical testimony. Admittedly, there is evidence from which a different conclusion could have been reached. However, again, it is the jury's province to judge the credibility of witnesses, accepting or rejecting all or part of the testimony. Further, it is the jury's responsibility to resolve the conflicts and inconsistencies. *See Garza v. Commercial Ins. Co.*, 508 S.W.2d 701, 702 (Tex.Civ.App.—Amarillo 1974, no writ). We conclude that there is sufficient evidence from which the jury could have found that Martin suffered permanent partial disability as a result of an on-the-job injury that was sustained on October 19, 1989. Further, we cannot say that the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is manifestly unjust and wrong. Accordingly, we overrule points of error one through three.

## EXCLUSION OF EVIDENCE

In the final points of error, the carrier complains about the exclusion of certain testimonial and documentary evidence. Specifically, the carrier complains that the trial court erred in excluding: (i) a 1981 job application that Martin submitted to an unrelated car dealership; (ii) testimony concerning the doctrine of secondary gain;[4] and (iii) documents demonstrating Martin's prior workers' compensation claims and certain pleadings from a 1987 personal injury suit.

4. Secondary gain is a psychiatric term dealing with the benefit or reward that is gained by a patient from an illness. The reward may be tangible, such as disability benefits, or psychological, such as increased sympathy. *See Wright v. Excalibur Ins. Co.*, 486 S.W.2d 130, 132 (Tex.Civ.App.—Dallas 1972, no writ); 3 J.E.

## A. *The Texas Rules of Civil Evidence*[5]

To obtain reversal of a judgment based on error in the admission or exclusion of evidence, the party seeking review must show that the trial court's ruling was in error and that the error was calculated to cause and probably did cause rendition of an improper judgment. *See* TEX.R.APP.P. 81(b)(1); Rule 103; *Harrison v. Texas Employers' Ins. Ass'n*, 747 S.W.2d 494, 498 (Tex.App.—Beaumont 1988, writ denied); *Texaco, Inc. v. Pennzoil, Inc.*, 729 S.W.2d 768, 837 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dismissed*, 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988). Reversible error does not usually occur in connection with rulings on questions of evidence unless the complaining party can demonstrate that the whole case turns on the particular evidence admitted or excluded. *See Pennzoil*, 729 S.W.2d at 837; *Atlantic Mut. Ins. Co. v. Middleman*, 661 S.W.2d 182, 185 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.).

Before evidence is admissible, it must be relevant as defined by rule 401. To meet the relevancy test of rule 401, the offered evidence must have probative value; that is, it must logically *tend* to make a particular proposition more or less likely. Second, that proposition must be of consequence to some issue in the trial. *See* Rule 401; *Keene Corp. v. Gardner*, 837 S.W.2d 224, 230 (Tex.App.—Dallas 1992, writ denied). In determining relevancy, we look at the purpose for offering the evidence. The relevancy test is satisfied if there is some logical connection either directly or by inference between the fact offered and the fact to be proved. *See* Rule 401; 33 STEVEN GOODE, OLIN G. WELLBORN III & M. MICHAEL SHARLOT, GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 401.3 (Texas Practice 1988).

SCHMIDT, ATTORNEY'S DICTIONARY OF MEDICINE AND WORD FINDER S–62 (1991).

5. All further references to rules are to the Texas Rules of Civil Evidence unless otherwise indicated.

## B. *The Employment Application*

In the fourth point of error, the carrier argues that the trial court erred in excluding defendant's exhibit two, a 1981 job application that Martin submitted to an unrelated car dealership. The carrier asserts that this exhibit is relevant to demonstrate Martin's willingness to make misrepresentations for financial gain.[6] The carrier further contends that the exhibit contains impeaching evidence about Martin's earnings and the reason for his termination from a previous employer.

Rule 404 prohibits a party from injecting evidence of other wrongs or acts to show that the witness acted in conformity therewith. *See* rule 404(b); *Nix v. H.R. Management Co.*, 733 S.W.2d 573, 576 (Tex. App.—San Antonio 1987, writ ref'd n.r.e.) (evidence that tenant lied in unrelated matter was not admissible in her action against apartment complex). This type of evidence, however, may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See* Rule 404(b); *Nix*, 733 S.W.2d at 576.

The impeachment method that was attempted in this case is governed by rule 608. Under rule 608(a), a witness's credibility can be attacked by either opinion or reputation evidence. The evidence, however, must relate only to the witness's character for truthfulness or untruthfulness. *See* Rule 608(a). Rule 608(b) explicitly prohibits impeaching a witness's testimony by inquiring about specific acts of the witness other than criminal convictions as provided by rule 609. *See* Rule 608(b).

The carrier's attempt to introduce the job application raised a collateral matter to prove Martin's character in an effort to show that he acted in conformity therewith. We note that the carrier did not offer this evidence as proof of such things as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. As such, it was not admissible under rule 404(b). Further, the attempt to impeach Martin with this evidence violated the prohibitions of rule 608(a) and (b). Therefore, we conclude that the trial court did not abuse its discretion in excluding this exhibit. We overrule the fourth point of error.

## C. *Testimony Relative to Secondary Gain*

In its fifth point of error, the carrier complains that the trial court erred in excluding Dr. Xiques's testimony relative to the doctrine of secondary gain. For the reasons set forth, we conclude that the carrier has failed to properly preserve this complaint.

Assuming that the trial court commits error, we will not reverse the judgment unless we are of the opinion "that the error complained of amounted to such a denial of the rights of [the complaining party] as was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case." *See* Tex.R.App.P. 81(b); *McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex.1992). Further, the burden is on the party seeking review to see that a sufficient record is presented to show error requiring reversal. *See* Tex.R.App.P. 50(d); *Pope v. Stephenson*, 787 S.W.2d 953, 954 (Tex.1990).

One of the carrier's pleaded defenses concerned the doctrine of secondary gain. It was the carrier's position that Martin's incapacity was either caused or enhanced by the prospect of litigation rewards. The only evidence presented on this issue was through the testimony of Dr. Xiques.[7] In this connection, the statement of facts provides in relevant part:

[MARTIN'S COUNSEL]: Then, I believe we get over to Page 31, beginning with Line 1: "Doctor, have you ever heard of the doctrine of secondary gain?

[DOCTOR'S ANSWER]: Yes.

[MARTIN'S COUNSEL]: And then he goes through the remainder of Page 31, down through Page 32, Line 10.

---

6. Martin falsely answered "no" to the question whether he had ever been injured on the job.

7. Dr. Xiques did not personally testify at the trial; rather, his testimony was presented through the use of his deposition.

Thereafter, the attorneys engaged in a colloquy with the trial judge about the admissibility of the doctor's testimony. This discussion, however, does not reflect the nature of the proposed testimony. In addition, the carrier did not present or offer the applicable deposition pages for purposes of a bill of exception. *See* TEX.R.APP.P. 52; *Clone Component Distribs., Inc. v. State*, 819 S.W.2d 593, 597 (Tex.App.—Dallas 1991, no writ).

■ Admittedly, the carrier made the trial court aware of the proposed evidence and the reason it was being offered. However, the statement of facts does not present the doctor's testimony, and this evidence is not apparent from the attorneys' discussions. From this record, it is impossible to determine whether the trial court erred in excluding the doctor's testimony. Further, even if we were to assume trial court error, without knowing the substance of the proposed testimony, we cannot determine whether the trial court's actions rendered the proceedings materially unfair. *See* TEX.R.APP.P. 81(b); *McInnes v. Yamaha Motor Corp., U.S.A.*, 673 S.W.2d 185, 187 (Tex.1984), *cert. denied*, 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985). Therefore, we overrule the fifth point of error.

### D. *Evidence of Other Claims and Settlements*

In its final point of error, the carrier complains that the trial court erred in excluding exhibits five through seven. Specifically, the carrier asserts that evidence should have been admitted to demonstrate that:

- On May 22, 1980, while employed at Impact Extrusions, Inc., Martin claimed an on-the-job injury to his finger, hand, and "body generally." This claim was settled in March 1981 for $750.
- In October 1981, Martin claimed on an employment application that he did not have any physical defects or hearing defects and that he had never suffered an injury.

- In August 1984, while working at another car dealership, Martin claimed an on-the-job injury to his knee and "body generally." This claim was settled for $6000 in November 1984.
- Thereafter in April 1991, on another job application, Martin claimed that he was free of any disabilities.
- While grocery shopping in July 1986, Martin stepped on a foreign substance causing him to slip and fall. As a result, there was a general "jarring throughout [his] body." Martin's lawsuit against the supermarket chain was settled for $1800 in October 1988.

The carrier contends that this evidence was relevant to its defense that

> [Martin] has demonstrated a pattern of injury in connection with his workers' compensation claims such that [he] alleges an injury, prosecutes a claim, the claim is resolved, and [Martin] thereafter returns to gainful employment. Such has occurred, or in the alternative will occur, in this case, and further demonstrates that any alleged incapacity or loss of use by [Martin] following the incident made the basis of this suit was and is only temporary and partial.

In support of this argument, the carrier relies upon *Wright v. Excalibur Insurance Company*, 486 S.W.2d 130 (Tex.Civ.App.—Dallas 1972, no writ).

In *Wright*, the claimant sustained a minor injury that produced "an involuntary conversion reaction." The ultimate question at trial was the extent and duration of the claimant's disability. *Wright*, 486 S.W.2d at 131. The insurance carrier's theory, which was supported by expert-opinion testimony, was that an injured employee who suffers a conversion reaction or neurosis related to an actual injury often quickly recovers once the claim for the injury had been settled. *Wright*, 486 S.W.2d at 134. The trial court allowed the insurance company to develop its theory by admitting evidence that:

- The claimant suffered an accidental injury to his head, an arm, and an eye in 1953.

- In 1967 the claimant sustained an injury to his back necessitating removal of a disc.
- On May 29, 1979, the claimant again injured his lower back, which incident gave rise to the litigation.
- As a result of each of these injuries, the claimant suffered an involuntary conversion reaction, with "marked secondary gain."
- The claimant filed claims, employed attorneys, filed lawsuits, and made settlements of the 1953 and 1967 claims.
- After each of the previous claims were settled, the claimant experienced a complete recovery.

*Wright*, 486 S.W.2d at 131–32. On appeal, the claimant argued that the trial court erred in admitting this evidence. Under the facts of that case, this Court held that there was a valid purpose for offering and admitting this evidence. Thus, we concluded that the trial court did not commit reversible error in permitting the insurance company to develop its defensive theory. *Wright*, 486 S.W.2d at 134.

Significantly, the carrier did not present the same type of evidence as was presented in *Wright*. In *Wright*, all parties agreed that the claimant suffered from an "involuntary conversion reaction" and that this was a genuine producing cause of incapacity. The only disagreement concerned the extent and duration of that incapacity. To address that issue, each side presented expert testimony. *Wright*, 486 S.W.2d at 133. There is no evidence that Martin suffers from any type of involuntary conversion reaction or like psychiatric condition.

Further, in *Wright*, there were no efforts to establish the amounts paid to the claimant in the previous settlements. And, the insurance company at no time took the position that claimant was a malingerer or was exaggerating his injuries. *Wright*, 486 S.W.2d at 134; *cf. Brinkley v. Liberty Mut. Ins. Co.*, 331 S.W.2d 423, 425–26 (Tex. Civ.App.—Texarkana 1959, no writ) (error to admit evidence of previous injuries where emphasis was on amounts paid in settlements of previous claims and no reasonable excuse was given for proving facts of settlements and amounts paid). The carrier's proffered exhibits included the various settlement documents demonstrating the amounts that Martin had received as a result of his injuries. We note that the carrier does not offer any basis for the introduction of the facts of the settlements and the amounts paid. Because of these significant factual differences, we conclude that *Wright* is not dispositive of the carrier's arguments. In addition, this Court's holding in *Wright* does not stand for the proposition that a trial court necessarily commits reversible error by excluding such evidence.

Otherwise admissible evidence may be excluded if, on balance, the benefits of admitting such evidence are substantially outweighed by the dangers of doing so. Rule 403 states:

Although relevant, evidence may be excluded if its probative value is *substantially outweighed* by the dangers of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

Rule 403 (emphasis added). In making its determination under rule 403, the trial court must: (i) identify the probative value of the proffered evidence; (ii) identify the costs of admitting the evidence; and (iii) weigh one against the other. If the dangers substantially outweigh the probative value of the proffered evidence, it should be excluded. *See* HULEN D. WENDORF, DAVID A. SCHLUETER & ROBERT R. BARTON, TEXAS RULES OF EVIDENCE MANUAL, IV–18 (1991).

In workers' compensation claims, the general rule prohibits admission of previous or subsequent claims, unrelated to the present claim or injury, for the purpose of showing that the party is a malingerer or a habitual or chronic claimant. *See Brinkley*, 331 S.W.2d at 425–26; GOODE ET. AL., *supra* § 401.6. While the introduction of such evidence tends to uphold an insurer's position, it is not admissible for that purpose under any rule of evidence. *See Hartford Accident & Indem. Co. v. McCardell*, 369 S.W.2d 331, 339 (Tex.1963).

The introduction of such evidence is inherently harmful and prejudicial to a claimant's case. *See McCardell*, 369 S.W.2d at 339.

 In addition there exist the dangers of confusion of the issues and misleading the jury. Importantly, none of the injuries involved Martin's left shoulder. However, because the incidents involve bodily injury and Martin's subsequent filing of claims, it is likely that the introduction of this evidence would confuse the issues and might lead the jury into drawing incorrect inferences about the issues at hand. We further conclude that these dangers substantially outweigh the probative value of the evidence.

Lastly, the introduction of this evidence would have a significant impact on the trial itself and would unduly delay the resolution of the issues. By the introduction of this evidence, the trial court subjects the jury to evidence that essentially constitutes a relitigation of the circumstances surrounding the other incidents as well as testimony that explores the nature and extent of Martin's prior injuries. Again, we conclude that this danger substantially outweighs the probative value of the proffered evidence.

Considering the potential prejudicial effects on the jury's deliberative process and the trial itself, we cannot say that the trial court abused its discretion in excluding this evidence. Accordingly, we overrule the sixth point of error.

We affirm the trial court's judgment.