**Opinion issued April 14, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00457-CV

_____

**SAM  KUZBARY, Appellant**

**V.**

**MIRIAM KUZBARY, Appellee**

---

**On Appeal from the 280th District Court**
**Harris County, Texas**
**Trial Court Case No. 2014-13468**

---

## MEMORANDUM OPINION

Miriam Kuzbary applied for a protective order against her father, Sam Kuzbary, alleging that she was in fear for her safety. After considering six hours of testimony and multiple emails Sam had written to Miriam in the months before the protective-order hearing, the trial court found that Sam had committed family

violence against his adult daughter in the past and was likely to do so again in the future. Accordingly, the trial court granted Miriam's application. Sam moved for a new trial. The trial judge who issued the protective order recused herself; another judge denied his motion.

In four issues, Sam contends that the trial court erred by (1) "expanding the definition of family violence," (2) finding that Sam committed family violence in the past, (3) finding that Sam was likely to commit family violence in the future, and (4) engaging in conduct that led to the rendition of an improper judgment.

We affirm.

## Background

Miriam Kuzbary is a graduate student in mathematics at Rice University in Houston. She attends Rice on a full scholarship and receives a salary from the university for her work as a teaching assistant in the math department. She is 23 years old and is financially independent.

Miriam's parents have a home near Dallas. In 2012, her father accepted employment in Houston. He moved into Miriam's apartment for a couple of months, staying with her during the week and returning to Dallas on the weekends. According to Miriam, she eventually asked him to move out because Sam was "drinking a lot" and "keeping [her] up until one or two in the morning screaming at [her]." Sam moved into an extended stay hotel in the Houston area.

2

Tensions grew between the two and, in January 2013, Miriam asked Sam to stop contacting her. He responded by email: "Do not provoke me to teach you a life lesson. I am still equipped and capable, and no one will deter me from doing so, if I deemed it warranted. No one." In emails sent over the next two months, he wrote, "I will be commanding your next order in life," "watch your peep hole," that Miriam "will be subjected to necessary lessons," and that she cannot "endure . . . consequences" because of her "cowardliness."

When asked at the hearing if Sam had ever been physically abusive towards her, Miriam responded, "Yes." She testified that there had been multiple incidents of repeated slapping and that "watch your peep hole" is something he would often say before hitting her. Miriam testified about one event in particular. She stated that, when she was 19, he pushed her against the refrigerator in his home and "slapped [her] repeatedly back and forth between his hands." She also testified about a time when Sam put his hands on her neck and pushed her until she fell over.

In June 2013—five months after Miriam originally told Sam to stop contacting her—she sent him an email stating, "You need to stop threatening me." He responded by writing, "I do not threaten, kid. I warn and execute sanctions . . . ." The next day, Sam sent Miriam an email saying, "I will see your crying silhouette at [sic] my next order of business with you."

Miriam testified that Sam's emails became "increasingly hostile and nonsensical." Also, he came by her apartment after being instructed not to contact her. She testified that his continuous emails scared her and she believed he was going to hurt her. Miriam contacted Rice University Police for assistance.

The police incident report, admitted into evidence at the protective-order hearing, states that the police contacted Sam in June 2013 and that Sam said any future correspondence with his daughter would be limited to contact through an attorney.

In February 2014, Sam wrote an email to Miriam's grandmother and copied Miriam on the correspondence. He stated that Miriam "is still going to be up for a lot of a— whipping" but that he would not "dirty [his] hands" with the matter; instead, it would be by another. One week later, Sam emailed Miriam directly, stating, "[Y]ou may think you got away with your bad conduct with mom. In your dreams kid, only. You won't. I am about to teach you that, the hardest way I am capable of . . . I have no mercy on garbage kids like you."

Miriam again contacted the Rice University Police. The police called Sam on February 11 and instructed him to stop contacting Miriam. He agreed by phone but sent more emails to Miriam that same day. The campus police contacted Sam several more times and asked him to stop contacting Miriam. Each time he agreed but would continue sending emails contrary to his statements to the police. At

times, his emails to Miriam would be within hours of his phone conversations with the police officers instructing him not to contact her. Miriam described one email as stating that "he would cut me into pieces and no one would be able to do anything about it." Another said "he would barbecue" her.

Eventually, Sam began emailing Miriam's professors and interfering with her professional relationships. He also sent emails to other university administrators and campus police officers.

Miriam testified that, in her opinion, Sam "seem[ed] to be growing more and more desperate and scary," ignoring directives from Miriam and campus police to end the contact, and sending emails "multiple times each day." She stated that her father's actions "put [her] in fear of [her] physical and emotional safety."

Miriam filed an application for a protective order in March 2014, attaching an affidavit that detailed past physical aggression and copies of various emails from Sam. Additional emails were admitted into evidence during the hearing.

At the conclusion of the hearing, the trial court announced its findings that family violence had occurred in the past and was likely to occur in the future. The trial court granted Miriam's application for a protective order. Sam was ordered not to contact Miriam directly or through third-parties, not to go with 400 feet of her residence, school, or work, to relinquish possession of his multiple firearms, and to complete a battering intervention and prevention program, among other

requirements. The trial court also ordered the suspension of Sam's license to carry a concealed handgun. Although requested to do so, the trial court did not issue findings of fact or conclusions of law outside of those contained in the protective order.

Sam filed a motion for new trial, arguing that there was insufficient evidence of past family violence or the likelihood of future violence, the trial court relied on an incorrect definition of "family violence" that did not comport with the statutory definition, the trial court erred in overruling evidentiary objections, and "the trial court abused its discretion during the trial when the trial judge was 'texting' on a mobile device because such a distraction led to the improper rendition" of a protective order. The trial judge recused herself from ruling on the motion for new trial. Another judge was appointed, and the motion was denied.

Sam timely appealed.

## Sufficiency of Evidence Challenges

In his second and third issues, Sam argues that the evidence did not support the trial court's conclusions that Sam had committed family violence in the past or that he was likely to do so again in the future.

## A. Standard of review

When the trial court acts as a factfinder, we review its findings under the legal and factual sufficiency standards. *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000);

6

*Vongontard v. Tippit*, 137 S.W.3d 109, 112 (Tex. App.—Houston [1st Dist.] 2004, no pet.). When the party who does not have the burden of proof at trial challenges the legal sufficiency of the evidence, we consider all of the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *City of Houston v. Hildebrandt*, 265 S.W.3d 22, 27 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). "If there is any evidence of probative force to support the finding, i.e., more than a mere scintilla, we will overrule the issue." *Hildebrandt*, 265 S.W.3d at 27 (citing *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005)).

When reviewing a factual sufficiency challenge, we examine all of the evidence in the record and will set aside the trial court's finding only if it is "so against the great weight and preponderance of the evidence as to be clearly wrong and unjust." *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Kroger Co. v. Persley*, 261 S.W.3d 316, 319 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *Richardson v. Estate of Smith*, No. 01-14-00034-CV, 2014 WL 6068427, at *2 (Tex. App.—Houston [1st Dist.] Nov. 13, 2014, no pet.) (mem. op.). The trier of fact is the exclusive judge of which facts have been proven, which witness is credible, and the weight to be given any witness's testimony. *Turner v. KTRK*

*Television, Inc.*, 38 S.W.3d 103, 134 (Tex. 2000); *Benoit v. Wilson*, 239 S.W.2d 792, 796–97 (Tex. 1951).

When there is conflicting evidence, the trier of fact may believe one witness and disbelieve others. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986); *CCC Grp., Inc. v. S. Cent. Cement, Ltd.*, 450 S.W.3d 191, 196 (Tex. App.—Houston [1st Dist.] 2014, no pet.). The trier of fact is permitted to resolve inconsistencies in the testimony of any witness. *McGalliard*, 722 S.W.2d at 697; *CCC Group*, 450 S.W.3d at 196. It may draw inferences from the facts and choose between conflicting inferences. *Ramo, Inc. v. English*, 500 S.W.2d 461, 467 (Tex. 1973); *Lakner v. Van Houten*, No. 01-09-00422-CV, 2011 WL 1233381, at *3 (Tex. App.—Houston [1st Dist.] Mar. 31, 2011, no pet.) (mem. op.) (affirming grant of protective order).

An appellate court will not overturn a factfinder's determination unless only one inference can be drawn from the evidence and it is counter to the factfinder's resolution of that issue. *Havner v. E-Z Mart Stores, Inc.*, 825 S.W.2d 456, 461 (Tex. 1992); *Lakner*, 2011 WL 1233381, at *3.

**B.    Family code provisions concerning protective orders**

A court shall render a protective order if the court finds that family violence (1) has occurred and (2) is likely to occur in the future. TEX. FAM. CODE ANN. §§ 81.001, 85.001 (West 2014). "Family violence" is defined, in pertinent part, as

> [A]n act by a member of a family . . . against another member of the family . . . that is intended to result in physical harm, bodily injury, assault, or sexual assault *or* that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault . . . .

TEX. FAM. CODE ANN. § 71.004(1) (West 2014) (emphasis added). Thus, a family member's actions can meet the definition if they are intended to result in harm or involve a threat that reasonably places the other family member in fear of imminent harm. *Boyd v. Palmore*, 425 S.W.3d 425, 430 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

"Given the remedial nature of [the Family Code's protective order provisions], courts should broadly construe its provisions so as to effectuate its humanitarian and preventative purposes." *Id.*

## C. Past family violence

In his second issue, Sam contends that the evidence was legally and factually insufficient to establish that he committed family violence against Miriam in the past. More specifically, Sam asserts that there was "no evidence of an overt physical act" in the past.

### 1. Legal sufficiency

The evidence, viewed in the light most favorable to the trial court's finding, shows that on at least three occasions Sam was physically aggressive with Miriam. At least twice—after Miriam had reached the age of majority—Sam slapped her

9

face repeatedly back and forth. On another occasion, he entered his adult daughter's bedroom, put his hands on her neck, and pushed her hard enough to cause her to fall down. When asked at the hearing if Sam had been physically abusive towards her, Miriam responded, "Yes."

Miriam's testimony about these incidents provides legally sufficient evidence of past family violence. *Compare Vongontard*, 137 S.W.3d at 113 (concluding that actions by ex-boyfriend, in which he "pushed" her on three occasions, met equivalent definition for "dating violence"), *and Dempsey v. Dempsey*, 227 S.W.3d 771, 778 (Tex. App.—El Paso 2005, no pet.) (stating that ex-husband's "act of pushing" his ex-wife "falls squarely within the definition of family violence"), *and Clements v. Haskovec*, 251 S.W.3d 79, 85 (Tex. App.—Corpus Christi 2008, no pet.) (holding that father's actions, including when he "raised his fist at his daughter" without striking her, was evidence of family violence), *with Thompson v. Thompson O'Rear*, No. 06-03-00129-CV, 2004 WL 1243080, at *2–4 (Tex. App.—Texarkana May 12, 2004, no pet.) (mem. op.) (dissolving protective order after noting that ex-husband was accused of verbally harassing his ex-wife and sending emails that criticized her but that ex-wife admitted he had neither physically harmed her nor threatened to do so). At a minimum, evidence of Sam's past physical aggression was legally sufficient to conclude that Sam intended to place Miriam in fear of imminent physical harm, if

not to actually harm her. Accordingly, we conclude that there is more than a scintilla of evidence to show that Sam had committed acts of family violence in the past.

Sam suggests that these incidents occurred too long ago to be considered by the trial court. However, he cites no authority for the proposition that acts of family violence that occurred two to four years before the application for a protective order are too remote to support the issuance of a protective order. Our review indicates that they are not. *See Dempsey*, 227 S.W.3d at 773–78 (considering actions by ex-husband five years before application for protective order and holding that evidence was legally and factually sufficient to grant protective order).

We conclude that the trial court's finding of past family violence is supported by legally sufficient evidence. Accordingly, we need not reach Sam's argument concerning whether his emails establish past violence.

### 2.    Factual sufficiency

Miriam testified that Sam had been physically abusive towards her in the past. She testified that Sam had a history of repeatedly slapping her and, on at least one occasion, he grabbed her by the neck and pushed her down.

During Sam's testimony, he discussed the incident in Miriam's room when he allegedly pushed her down. He testified, "Yes, I am rough and yes, I was rough

with her." He did not directly deny pushing her down. Instead, he offered, "I don't think I can do that. She's a lot heavier than me."

The trial judge, as factfinder, was free to evaluate the credibility of the witnesses and choose to believe that Miriam's account of the past events was more credible. *McGalliard*, 722 S.W.2d at 697; *CCC Grp.*, 450 S.W.3d at 196. The trial judge, likewise, was free to disagree with Sam's characterization of the evidence and to conclude that Sam had committed family violence. *McGalliard*, 722 S.W.2d at 697; *CCC Grp.*, 450 S.W.3d at 196. This finding is not so weak as to be clearly wrong or manifestly unjust. *See Ortiz*, 917 S.W.2d at 772; *Persley*, 261 S.W.3d at 319. Thus, the trial court's finding is supported by factually sufficient evidence.

We overrule Sam's second issue.

## D. Future family violence

In his third issue, Sam contends that there was legally and factually insufficient for the trial court to have found that he was likely to commit acts of family violence in the future.

In cases involving family-violence protective orders, evidence that a person has engaged in abusive conduct in the past permits an inference that the person will continue this behavior in the future. *In re Epperson*, 213 S.W.3d 541, 544 (Tex. App.—Texarkana 2007, no pet.) ("Oftentimes, past is prologue; therefore, past violent conduct can be competent evidence which is legally and factually sufficient

12

to sustain the award of a protective order."); *Matter of Frasure*, No. 05-13-01667-CV, 2015 WL 459223, at *6 (Tex. App.—Dallas Feb. 4, 2015, no pet.) (mem. op.). This Court has held that evidence of an on-going pattern of past violence is not required; even a single event may suffice. *Boyd*, 425 S.W.3d at 432 ("The statutory language of Title IV does not require that a likelihood finding be based on more than one act of family violence."); *see also Davis v. Sampson*, No. 01-10-00604-CV, 2011 WL 6306639, at *6 (Tex. App.—Houston [1st Dist.] Dec. 15, 2011, no pet.) (mem. op.).

### 1. Legal sufficiency

The evidence, viewed in the light most favorable to the trial court's finding, shows that Sam had been physically aggressive with Miriam in the past, including repeatedly slapping her and knocking her down after grabbing her neck. In addition to past physical contact, there was extensive evidence regarding Sam's email communications with Miriam.

Miriam and Rice University Police Officer Y. Avalos testified about Miriam's requests that the campus police contact Sam and instruct him to stop contacting her, as well as the officers' efforts to do so. The police incident report recounts multiple occasions when the police instructed Sam to stop contacting Miriam, Sam agreed to do so, then Sam sent Miriam additional emails in defiance

of those instructions. On some occasions, the emails came within hours of the call from the campus police.

In his emails, Sam stated that he was "equipped" to teach Miriam a life lesson and would not be stopped from doing so. Sam wrote that he was "about to teach" Miriam a lesson "the hardest way I am capable of . . . I have no mercy on garbage kids like you." He further stated that "he would cut [her] into peaces [sic] and no one would be able to do anything about it" and that "he would barbecue" her. In response to her email instructing him to "stop threatening" her, he responded, "I do not threaten, kid. I warn and execute sanctions . . . ." Miriam testified that these emails scared her and she believed he was going to hurt her.

In light of Sam's past aggression and his harassing and threatening emails—defying requests by Miriam and campus police to stop contact—there was legally sufficient evidence from which the trial court could conclude that it was likely that Sam, if not enjoined, would commit future acts of family violence against Miriam.

## 2. Factual sufficiency

While past violence can be factually sufficient evidence to find a likelihood of future violence, *Boyd*, 425 S.W.3d at 432, Miriam's evidence was not limited to past acts. Sam's emails provided additional evidence.

Sam testified that he did not intend his emails to be threatening. He explained that they were meant to be "educational" and to address her "lies" and

14

"deceit." He also testified that English is his third language and that he often "run[s] into problems with [his] choice of vocabulary." He explained,

> In an attempt to avoid translating . . . from Arabic to English and try to recollect the vocabulary database that I have learned so far—and you can see how I'm trying to assemble the answer for you because my brain at time just do—go out of control and do operating in Arabic language and I need to be on the fly capable to translate my thoughts or my answers in a constructive . . .

It was within the trial judge's province to disbelieve Sam's explanation that the threatening tone in his emails was the result of translation errors. The trial judge was free to infer from Sam's emails that he intended to threaten Miriam. *Lakner*, 2011 WL 1233381, at \*4.

There was evidence that Sam—who lived part-time in the Houston area—had come to Miriam's apartment after being instructed to have no contact with her and had unsuccessfully attempted to do so again. Accordingly, the trial judge could infer that Sam's threats presented a risk of future harm. *Cf. Davis v. Sampson*, No. 01-10-00604-CV, 2011 WL 6306639, at \*5 (Tex. App.—Houston [1st Dist.] Dec. 15, 2011, no pet.) (mem. op.) (concluding that threats by ex-boyfriend, who lived in another state, "reasonably could be understood to threaten imminent physical harm" because his texts indicated he was en route at time they were sent).

The evidence of past violence and threats of future violence was not so weak as to cause the trial court's finding of a likelihood of future violence to be clearly wrong or manifestly unjust. *See Ortiz*, 917 S.W.2d at 772; *Persley*, 261 S.W.3d at

15

319. Thus, the trial court's finding on this issue is supported by factually sufficient evidence.

We overrule Sam's third issue.

**Evidence of Emotional Harm**

In his first issue, Sam contends that there was an improper rendition of a protective order against him because the trial court expanded the definition of family violence to include threats of emotional harm by admitting otherwise irrelevant evidence.

We have already concluded that the evidence was legally and factually sufficient to affirm a finding that Sam has committed family violence, as defined in section 74.001 of the Texas Family Code, and that he is likely to commit family violence in the future in the absence of a protective order. In light of these conclusions, the issue of whether threats of emotional harm would also support the issuance of a protective order is unnecessary to the resolution of this appeal and is, therefore, moot.

Further, to the extent Sam's objection can be understood to challenge the trial court's ruling allowing testimony of "emotional and psychological" abuse and "control," the trial court's ruling on the admissibility of such evidence will not be overturned absent an abuse of discretion. *See Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 235 (Tex. 2011) ("We review a trial court's decision to admit

evidence for an abuse of discretion."); *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005). An appellate court must uphold the trial judge's evidentiary ruling if there is any legitimate basis for it. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

Sam asserted a relevancy objection to testimony about his "emotional and psychological" abuse and "control" over Miriam. Specifically, he objected that Officer Avalos, who assisted Miriam in directing Sam to cease contact, did not have personal knowledge of any relevant information because she did not observe him assaulting or threatening Miriam. Next, he objected to Officer Avalos reading from an email he sent to her, stating that he "will not tolerate [the officer] interfering" with his relationship with his daughter or telling him how to "raise and conduct" himself with Miriam. He also objected to Miriam's testimony that Sam had removed $1,000 from her bank account. Miriam testified that the dispute over the money was about her father "[c]ontrolling me to do what he wants" and that, when she does not do so, "it escalates."

Evidence that is irrelevant is not admissible; on the other hand, evidence that is relevant is admissible unless excluded by other rules or statutes. TEX. R. EVID. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. In determining

17

relevancy, we look at the purpose for offering the evidence. A logical connection—either direct or inferential—between the fact offered and the fact to be proved satisfies the relevancy test. *Clark v. Randalls Food*, 317 S.W.3d 351, 357 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *Serv. Lloyds Ins. Co. v. Martin*, 855 S.W.2d 816, 822 (Tex. App.—Dallas 1993, no writ.).

We conclude that the trial court did not abuse its discretion in overruling Sam's relevancy objections. Miriam testified that Sam disregarded instructions from her and campus police to cease contact with her and that she believed the harassment would continue unless a protective order was issued. Officer Avalos's testimony was relevant to that assertion. Further, Miriam testified that her relationship with her father was deteriorating during this time and he was becoming "increasingly hostile and nonsensical." Relatedly, she averred that Sam's emails were "growing more and more desperate and scary" and were placing her "in fear of [her] physical and emotional safety." Evidence that Sam removed a substantial amount of money from the working student's bank account was relevant to the assertion of escalating tensions.

Having concluded that the trial court did not err in overruling Sam's relevancy objections, we overrule Sam's first issue.

## Trial Judge's Conduct

In his final issue, Sam contends that the trial judge was texting during his testimony. He argues that her actions "undoubtedly diminished [her] ability to fully listen to and consider [his] testimony during trial" and likely caused the "rendition of an improper judgment."  We understand Sam's contentions to either assert a sufficiency challenge or to challenge the denial of his new-trial motion, in which he argued the same point.

Having already concluded that the evidence was legally and factually sufficient to support the trial court's findings and the issuance of a protective order, we will address whether the second judge erred in denying Sam's motion for new trial based on the texting allegation.

### A.    Standard of review

A court has broad discretion to grant a motion for new trial and may do so "for good cause." TEX. R. CIV. P. 320; *In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 210 (Tex. 2009). The denial of a new-trial motion is reviewed for abuse of discretion. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010); *Sozanski v. Plesh*, 394 S.W.3d 601, 604 (Tex. App.—Houston [1st Dist.] 2012, no pet.). A trial court abuses its discretion if it acts without reference to any guiding rules or principles or fails to correctly

analyze or apply the law. *Celestine v. Dep't of Family & Protective Servs.*, 321 S.W.3d 222, 235 (Tex. 2010); *Sozanski*, 394 S.W.3d at 604.

## B. Reviewing judge did not abuse discretion

Sam submitted an affidavit, attached to his motion for new trial, alleging that he testified for approximately 30 minutes at the protective-order hearing and that "[o]n at least three separate occasions, while [he] sat in the witness chair testifying in [his] defense, [he] viewed [the trial judge] 'texting' on what appeared to be a cell phone . . . ." Sam argued that the activity distracted the judge from hearing his testimony. Thus, he asserted that the judge was unable to process enough of his testimony to understand his side of the story or evaluate his credibility.

Sam offered no evidence regarding the length of time he alleges the judge was "distracted" by each text. He offered no evidence regarding whether these were quick replies or lengthy communications. Nor have we been told which portions of Sam's testimony he alleges were compromised. *Cf. Menard v. State*, 193 S.W.3d 55, 60 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (stating that, on allegation that juror had been sleeping and missed testimony, "trial court should consider whether 'the sleeping juror missed large portions of the trial or [whether] the portions missed were particularly critical.'" (citing *United States v. Freitag*, 230 F.3d 1019, 1023 (7th Cir. 2000))).

At the conclusion of the protective-order hearing, the trial judge specifically addressed Sam's characterization of his daughter's behavior as involving "deceit" and "lies." She stated that she did not find that the evidence supported those assertions. She also called into question Sam's contention that his emails may have been misconstrued due to translation errors. These statements by the trial judge—specifically addressing the contentions Sam made while testifying—belie his allegation that she had not effectively heard his testimony.

Given the lack of evidence developed on the issue and the trial court's contemporaneous statements demonstrating comprehension and recall of Sam's testimony, we conclude that the reviewing judge did not abuse his discretion in denying Sam's new-trial motion on this issue.

## Conclusion

We affirm the judgment of the trial court.


Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.

21