The **KROGER COMPANY**, Appellant,

v.

Sylvia R. **PERSLEY**, Appellee.

No. 01–06–00567–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

July 10, 2008.

Kelly Ann Dempsey, Brock C. Akers, Phillips & Akers, P.C., Mary Clauder, Houston, TX, for Appellant.

D. Matthew Freeman, David J. Coates, Matt Freeman & Associates, Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, HANKS, and HIGLEY.

## OPINION

GEORGE C. HANKS, JR., Justice.

Sylvia R. Persley, appellee, sued The Kroger Company and Blue Bell Creameries, Inc.[1] after she slipped and fell in a Kroger store. The trial court entered final judgment against Kroger after a jury found Kroger 65% liable and Blue Bell 35% liable on Persley's negligent activity claim.

In four issues, Kroger argues that the final judgment was improper because (1) there is no evidence to support the submission of a negligent activity claim as to Kroger to the jury, (2) the evidence is factually insufficient to support the submission of a negligent activity claim as to Kroger, (3) there are no pleadings to support the submission of a negligent activity claim as to Kroger, and (4) the trial court erred in failing to submit an issue regarding Persley's proportionate responsibility for her injury. We reverse and render.

## Background

Persley was shopping with her daughter, Tara Persley ("Tara"), at a Kroger store located on Aldine Mail Route in Houston, Texas. As Persley approached a freezer display for Blue Bell ice cream, she slipped and fell. The freezer display was an "end cap" or "frozen food" freezer located in the front of the store near the cash registers between Aisles 7 and 8.

Both Gilberto Luis, Kroger's Frozen Food Manager, and Victor Palermo, a Blue Bell employee, were stocking frozen food in the store on the day Persley fell. A Kroger employee, who arrived at the scene after Persley fell, testified that she saw water on the floor in the area where Persley fell. Persley brought this action against both Kroger and Blue Bell asserting claims for premises-defect and negligent activity.

The trial court found that there was no evidence of the notice element on the premises-defect claim and granted a directed verdict in favor of Kroger on this claim. However, the trial court submitted the negligent activity claim against Kroger to the jury.[2] The jury found Kroger 65% liable and Blue Bell 35% liable on the negligent activity claim and the trial court entered final judgment against Kroger. This appeal follows.

## Jury Submission

In issues one and two, Kroger complains that the trial court erred in entering judgment as to Kroger on a negligent-activity theory because there was no evidence or factually insufficient evidence to submit this claim to the jury.

### Standard of Review

When both no-evidence and factual sufficiency points of error are raised, we must address the no-evidence issue first. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex.1981). When we review a "no evidence" point of error, we must view the evidence in the light most favorable to the party in whose favor the jury entered verdict and indulge every reasonable inference deductible from that evidence in favor of that party. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex.2001). A no-evidence issue will be sustained when

---

1. Blue Bell settled with Persley and is no longer a party to this litigation.

2. The trial court also rejected Kroger's argument that some, if not all, of Persley's injuries were caused by her own negligence. Consequently, the trial court did not submit a question regarding Persley's proportionate responsibility for her injury to the jury.

the record discloses that: (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). If there is more than a scintilla of evidence to support the finding, the no-evidence challenge fails. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is not more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con–Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Havner*, 953 S.W.2d at 711.

■■■ Only one standard of review is used in reviewing factual sufficiency challenges, regardless of whether we are reviewing a negative or affirmative jury finding or whether the complaining party had the burden of proof on the issue. *M.J. Sheridan & Son v. Seminole Pipeline Co.*, 731 S.W.2d 620, 623 (Tex.App.-Houston [1st Dist.] 1987, no writ). We must first examine all of the evidence, and, having considered and weighed all of the evidence, we should set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *Otis Elevator Co. v. Joseph*, 749 S.W.2d 920, 923 (Tex.App.-Houston [1st Dist.] 1988, no

writ). Because the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony, in conducting a factual sufficiency review, we may not substitute our opinion for that of the trier of fact merely because we might have reached a different fact conclusion. *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988); *Rego Co. v. Brannon*, 682 S.W.2d 677, 680 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.).

## Negligent Activity Theory

■■■ "Before submitting a negligent activity theory of recovery, a trial court should first consider from the evidence and the pleading if the injury was created by and contemporaneous to an ongoing activity." *See Stanley Stores, Inc. v. Veazey*, 838 S.W.2d 884, 886 (Tex.App.-Beaumont 1992, writ denied). A trial court should not submit a negligent activity claim to the jury unless the evidence shows that the injury was caused by or was a contemporaneous result of the negligent activity itself rather than a condition created by the negligent activity. *Id.* at 886; *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992). The negligent activity theory of liability is only applicable where the evidence shows that the injuries were directly related to the activity itself. *Id.* If the injury was caused by a condition created by the activity rather than the activity itself, a plaintiff is limited to a premises defect theory of liability. *Lucas v. Titus Cty. Hosp. Dist./Titus Cty. Mem. Hosp.*, 964 S.W.2d 144, 153 (Tex.App.-Texarkana 1998, pet. denied).

The Texas Supreme Court's decision in *Keetch v. Kroger Co.* provides guidance in determining what evidence is needed to establish that an injury was the contemporaneous result of the negligent activity itself rather than a condition created by the negligent activity. *Keetch*, 845 S.W.2d

at 264. In *Keetch*, the plaintiff was injured 30 minutes after a chemical substance was deposited on a floor in the floral section of a Kroger store. *Id.* In rejecting the contention that Kroger's employees were conducting a negligent activity, the Texas Supreme Court noted that there was no "ongoing" activity by Kroger employees at the time of the plaintiff's injury. *Id.* Thus, while the plaintiff "may have been injured by a condition created by the spraying, ... she was not injured by the activity of spraying." *Id.* As the court noted "[a]t some point, almost every artificial condition can be said to have been created by an activity." *Id.* The court concluded that the case was properly a premises liability case, as opposed to a negligent activity case. *Id.*

In *Stanley Stores v. Veazey*, the Beaumont Court of Appeals applied the *Keetch* analysis to examine evidence regarding the proximity of the ongoing negligent activity to the location of the plaintiff's injury. *Stanley Stores*, 838 S.W.2d at 886. In *Stanley Stores*, while shopping in a store, the plaintiff slipped on a clear liquid and fell to the floor. *Id.* The store manager found "a small puddle of water and a paper cup" in the area where the plaintiff slipped. *Id.* The cup was a small sample-type similar to those being used at that time in promotion of a Pepsi display. *Id.* The Pepsi display was located near the front entrance of the store—away from the area where the plaintiff fell. *Id.* There was no evidence showing how the small cup and the clear substance came to rest in its location. *Id.*

■ The court held that, under the holding in *Keetch*, these facts were insufficient to support a negligent activity claim. As the court explained:

Let's assume that all of the evidence was proof positive (matter of law) that the liquid which caused Mrs. Veazey to slip

and fall did indeed originate from the Pepsi display activity which was ongoing at the time of the fall. Thus, we have an ongoing activity (Pepsi display) in one area of the store and a slip and fall on a substance generated from that activity in another area of the store. *Keetch* says, *"Recovery on a negligent activity theory requires that the person have been injured by or a result of the activity itself rather than a condition created by the activity."* Even under our proof positive assumption, Mrs. Veazey slipped on "a condition created by the activity."

We conclude then, that for a plaintiff to be entitled to a negligent activity submission, the evidence must show that the injuries were directly related to the activity itself.

*Id.* at 886 (emphasis in original). Thus, the Beaumont court held that there was "no connection between the injury and the ongoing Pepsi display which would lead us to conclude that the injury occurred as a contemporaneous result of an ongoing activity." *Id.* Accordingly, under the holdings in *Keetch* and *Stanley*, we conclude that to establish that an injury was the contemporaneous result of a negligent activity, the evidence must show that the alleged negligent activity occurred near both the time and location of the injury.

**Analysis**

■ In this case, Persley alleges that she fell as a result of the ongoing negligent activity of Luis stocking the end cap and/or "actively" stocking the frozen foods section. Persley alleges that Luis did not place warning cones in the aisles as he carried "dripping loads of frozen food" down the aisles back and forth from a pallet to stock various freezers, including the end cap. However, viewing the facts in the light most favorable to Persley and

even assuming that Luis *was* dripping water in the aisles, there is not more than a scintilla of evidence that, at the time Persley fell, Luis was either (1) in the process of stocking the end cap or (2) passing back and forth by the spot where she fell. To the contrary, the evidence at trial was that (1) at least 15 minutes passed between the time that Persley fell and the time that Luis left the area of the end cap to stock the frozen dinner section and (2) Luis was not passing back and forth by the end cap at the time of Persley's fall. The alleged ongoing negligent activity did not occur where the injury occurred. Thus, there was no connection between the injury and the stocking of the frozen foods section that would lead us to conclude that Persley's injury occurred as a contemporaneous result of a negligent activity. Persley testified that she did not see anyone with a cart at the time of her injury. She testified that, before the fall, she did not see anyone stocking the end cap. Tara testified that she and Persley went separate directions when they entered the store. She testified that, as she shopped, she did not see a Kroger employee stocking in the area where Persley fell.

Palermo, the Blue Bell employee, testified that, before Persley fell, Luis had been stocking frozen food next to him at the end cap, and there was water on the floor. Luis was using a shopping cart or basket to bring the frozen food to the end cap freezer. Palermo testified that Luis "had a basket there. He was putting product already from the pallet that had gotten in that day. He was working some product with plastic wrapped around." Palermo testified that there was water under Luis's basket that he assumed came from the product in the plastic wrap and that Luis did not have any warning cones or mats set out. Palermo also testified that it took him about 35 minutes to stock the end cap. During the 35 minutes that

Palermo was stocking the end cap, Luis was "in and out" of the area "going and getting some product, bringing some more and putting it out." Palermo testified that, about 15 minutes after he finished stocking it, Persley slipped and fell in front of the end cap. Palermo also testified that Luis was still stocking after he finished.

Luis testified, that at the time of Persley's fall, he was stocking frozen dinners on Aisle 7 from a pallet of frozen foods on Aisle 8. The pallet was located near the end of Aisle 8 toward the back of the store. He testified, with the assistance of a hand drawn map, that he took the product from the pallet on Aisle 8 to the frozen dinner freezer on Aisle 7 by walking to the back of the store and around the backside of the aisles. This path took him *away* from the end cap in the front of the store where Persley fell.

Luis testified that since he was working on a different aisle, he did not see Persley fall. He was called to the end of Aisle 8 by the co-manager, Mr. Lawrence, where he saw Persley lying on the floor. At the time he was called to the end cap, he had delivered other food to other portions of the frozen food section. He testified that he did not remember "most of the stuff that happened that day" because three and a half years had passed. He testified that he could have delivered food "anywhere in the frozen food department" including the "icebox at the front of the end cap."

Finally, Luis testified he did not know precisely how long it had been since he had last worked in the area around the end cap before Persley's fall. However he testified that, based on his experience of how long it would take him to load and move his cart and mat from the end cap to Aisle 7, at least 15 minutes had passed between the time that he was last working at the

end cap and when Mr. Lawrence called him over to see Persley lying on the floor.

Viewing the evidence in the light most favorable to the jury's findings and indulging every reasonable inference deductible from that evidence in their favor, we conclude that there was not more than a scintilla of evidence that Persley was injured by or as a contemporaneous result of the negligent activity of a Kroger employee itself rather than a condition created by the negligent activity. *See Keetch,* 845 S.W.2d at 264. Accordingly, the trial court erred in submitting the negligent activity claim to the jury and we sustain issue one.

Having sustained Kroger's no-evidence point of error, we need not address the remaining issues.

### Conclusion

We reverse the trial court's judgment and render judgment that the plaintiff take nothing.