Opinion issued April 16, 2020



In The

# Court of Appeals

For The

# First District of Texas

————————————

NO. 01-19-00123-CV

————————————

**JOSEPH ANDREW BEACH, Appellant**

**V.**

**CHRISTINE NICOLE BEACH, Appellee**

---

**On Appeal from the 328th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 18-DCV-257354**

---

## MEMORANDUM OPINION

Appellant, Joseph Andrew Beach, pro se and incarcerated, appeals a 99-year protective order entered in favor of appellee, Christine Nicole Beach. In three issues on appeal, appellant argues that (1) the trial court abused its discretion in entering a 99-year protective order; (2) the trial court violated his constitutional

right to assistance of counsel; and (3) the evidence is legally and factually insufficient to support the 99-year protective order.

We affirm.

## Background

In November 2018, Christine, through the Fort Bend District Attorney's Office, filed an application for a protective order against appellant pursuant to article 6.09 of the Texas Code of Criminal Procedure, and in the alternative, Chapter 85 of the Texas Family Code.[1]

At the protective-order hearing, B. Bolin, a patrol sergeant with the Fort Bend County's Sheriff's Office, testified that he was dispatched on August 24, 2015 to Christine and appellant's home on a felony assault. Upon arriving at the scene, Bolin testified that he entered the master bedroom and found "copious amounts of blood on the floor" and a mix of blood and water in the master bathroom. Bolin identified various photos from the night of the assault that depicted Christine with blood on her face, hair, and clothing, and a busted lip. The photos also showed that appellant had scratches on his face and body, which Bolin classified as defensive wounds. Bolin testified that Christine and appellant were married at the time of the assault and that appellant was ultimately convicted for the assault.

---

[1]    *See* TEX. CODE CRIM. PROC. art. 6.09; TEX. FAM. CODE §§ 81.001, 85.001.

Christine testified at the hearing that she was previously married to appellant, but they were divorced in the same court on July 24, 2018. They have one child, H.D.B., who was three-and-a-half-years-old at the hearing. She agreed that appellant had been convicted of family violence against her and that she had also been the victim in a prior misdemeanor case against appellant.

Christine testified that since appellant was transferred from the Fort Bend County Jail to the Texas Department of Criminal Justice ("TDCJ"), she had not reached out to him in any way and she wanted no contact with him. She further testified that appellant had been attempting to contact her since he was sent to TDCJ, she had received 76 letters since his transfer, and three different inmates had been used to send letters after she put restrictions in place. Christine testified that letters were sent to her church, her job, her divorce attorney, and to CPS. Christine testified that she tried to contact TDCJ 20 to 25 times to get them to stop appellant from contacting her, and she asked TDCJ to add her name to the negative mailing list. Even after she contacted TDCJ, appellant was still able to send her letters because "[h]e would write under all sorts of different names, addressing, changing one digit to the house number but contents and letters themselves were written by him and for me." Christine stated that the letters "make me feel completely uncomfortable. I felt like I was being threatened and continuously

harassed, that I was still being made a victim, even though I was suppose[d] to be free."

Christine testified that when the August 2015 assault initially started, she had her son in her arms and that her son "would have gotten blood on him from that assault by it coming off of me or potentially if [appellant] had gone over to pick him up or tried to, you know." Christine said she wanted a lifetime protective order because "he never ends and always gets worse and I almost lost my life several times this last time being the wors[t] and I don't want my son to be an orphan and he deserves better than being in a home full of violence and terror" and if the trial court did not give her the lifetime protective order, the cycle of violence would continue.

On cross-examination, Christine stated that during August 2015 and September 2017, she remained neutral while appellant was in custody with ongoing criminal investigations. She stated that if she had done anything against appellant and then he had gotten out, she would have "been in a body bag by the time he had reached the front door." She agreed that during this time period, she spoke with appellant once or twice a day. She further stated that when he was convicted, she visited him to say goodbye.

J. Brownson, a detective with the Fort Bend County Sheriff's Office, read from one of appellant's letters which said, "I'm not going away, ever. I'm going to

4

kill and die for what's mine. You and my children are mine. I don't care what it takes." Detective Brownson testified that he took appellant's statement as a threat. Detective Brownson also agreed that appellant's letters to Christine (1) indicated that appellant had admitted to being a member of the Hells Angel Gang, a violent, dangerous organization; (2) referred to appellant having "croweaters helping him on his side" which meant that he had "somebody that he could use to complete tasks for him"; (3) included threats to Christine if she got a passport for their son; and (4) stated that if Christine got other passport numbers or driver's license numbers, none of that information will be able to be hidden from him and that "I'm never going to go away, not ever. No matter what you do, I'm never going away."

After reviewing all of the documentation that Christine provided to him and speaking to her, Detective Brownson determined that appellant had committed the offense of stalking and that Christine reasonably feared for her safety. Detective Brownson also testified that he had been made aware that appellant had been indicted for a new criminal offense since he had been taken into custody. The trial court then admitted appellant's indictment, dated January 8, 2019, for criminal solicitation of capital murder of Christine.

At the end of the hearing, the trial court found that Christine was the victim of stalking by appellant and that family violence was likely to occur in the future. The trial court stated that "Probable cause exists to believe the offense under

5

Section 42.072 of the Penal Code has occurred and that the nature of the scheme or course of conduct engaged in by [appellant] in the commission of the offense indicates that [appellant] is likely to engage in the future in conduct prohibited by this Section." The trial court entered a 99-year protective order entitled, "Protective Order Pursuant to Article 7a of the Texas Code of Criminal Procedure Pursuant to Art. 6.09 Stalking Protective Order HB 1721."

Appellant filed a timely notice of appeal on February 15, 2019.

## Protective Order

In his first issue on appeal, appellant argues that the trial court abused its discretion in ordering a 99-year protective order in violation of applicable statutes. Appellant maintains that the statute that supported the protective order, article 6.09 of the Texas Code of Criminal Procedure, did not apply to him because he had not been charged, indicted, prosecuted, or convicted under section 42.072 of the Texas Penal Code. Appellant further argues that the trial court could not rely on section 85.025 of the Texas Family Code because a protective order under that section is limited to two years. Appellant likewise argues that article 7A of the Texas Code of Criminal Procedure cannot support the protective order because that article requires either a conviction or an award of deferred adjudication under section 42.072 of the Texas Penal Code.

6

Christine responds that although she sought a protective order pursuant to article 6.09 or alternatively under Chapter 85 of the Family Code, the trial court ultimately signed a protective order pursuant to article 7A of the Texas Code of Criminal Procedure. Because appellant has not made any arguments about the protective order pursuant to article 7A, Christine argues that Beach has failed to preserve this issue.

The record reflects that the trial court issued a protective order pursuant to article 7A of the Texas Code of Criminal Procedure.[2] The Texas Code of Criminal Procedure grants a trial court authority to issue a protective order "without regard to the relationship between the applicant and the alleged offender" if the applicant is a victim of certain crimes, including stalking. TEX. CODE CRIM. PROC. art. 7A.01(a)(1). Article 7A.01 provides that a person who is the victim of an offense, or a prosecuting attorney on behalf of a victim, under section 42.072 of the Penal Code "may file an application for a protective order under this chapter." TEX. CODE CRIM. PROC. art. 7A.01. A trial court "shall issue a protective order" if it finds that "there are reasonable grounds to believe that the applicant is the victim of . . . stalking." TEX. CODE CRIM. PROC. art. 7A.03. "Stalking" is a criminal

---

[2]    We note that a person can request a protective order under either the Code of Criminal Procedure or the Family Code. *See* TEX. CODE CRIM. PROC. arts. 6.09, 7A; TEX. FAM. CODE §§ 81.001, 82.002. The Family Code allows the trial court to issue a protective order "if the court finds that family violence has occurred and is likely to occur in the future." TEX. FAM. CODE § 81.001.

offense under the Penal Code. *See* TEX. PENAL CODE § 42.072. A person commits the offense of stalking if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct that:

(1)     constitutes an offense under Section 42.07, or that the actor knows or reasonably should know the other person will regard as threatening:

(A)    bodily injury or death for the other person;
. . . .

(2)     causes the other person . . . to be placed in fear of bodily injury or death . . . or to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; and

(3)     would cause a reasonable person to:

(A)    fear bodily injury or death for himself or herself; [or]

(B)    fear bodily injury or death for a member of the person's family or household . . . ; [or]
. . .

(D)    feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

TEX. PENAL CODE § 42.072. Under section 42.07, a person harasses another if, "with intent to harass, annoy, alarm, abuse, torment, or embarrass another," he "threatens, in a manner reasonably likely to alarm the person receiving the threat, to inflict bodily injury on the person or to commit a felony against the person . . . ." TEX. PENAL CODE § 42.07. Before the trial court can enter an order, it must hold a hearing to determine "whether there are reasonable grounds to believe that the

8

applicant is the victim of . . . stalking." TEX. CODE CRIM. PROC. art. 7A.03(a).  The

protective order may be effective for the duration of the lives of the offender and

victim or for any shorter period stated in the order.  *Id.* art. 7A.07.

The trial court issued the protective order pursuant to Chapter 7A and made

the findings required by article 7A.03.  TEX. CODE CRIM. PROC. art. 7A.03.  And,

as provided in article 7A.07, the trial court was within its discretion to make the

protective order for the duration of the lives of the offender and victim.  TEX. CODE

CRIM. PROC. art. 7A.07.   Because the trial court issued the protective order

pursuant to article 7A, we turn to appellant's argument that the trial court could not

issue a protective order pursuant to article 7A because the legislative intent of

article 7A.01 shows that before a trial court can issue a protective order, appellant

must have been convicted or have been placed on deferred adjudication for a crime

under Texas Penal Code section 42.072.  In support of his assertion, appellant

relies on the following language: "The change in law made by this Act applies to a

victim of criminally injurious conduct for which a judgment of conviction is

entered or a grant of deferred adjudication is made on or after the effective date of

this act."

Appellant does not provide a proper citation to this quote, but it appears that

appellant is referring to House Bill 1447 of the 84th Texas Legislature.  House Bill

1447 made revisions to article 7A and article 56.021 of the Texas Code of Criminal

Procedure, entitled "Rights of Victim of Sexual Assault or Abuse, Stalking, or Trafficking. *See* TEX. CODE CRIM. PROC. art. 56.021. The quoted language on which appellant relies does not apply to Article 7A, but rather article 56.021. Chapter 7A of the Code of Criminal Procedure does not require a criminal conviction before a protective order may be entered. *See* TEX. CODE CRIM. PROC. arts. 7A.01–.07; *Lopez v. Occhiogrosso*, No. 14-17-00324-CV, 2019 WL 347336, at *3 (Tex. App.—Houston [14th Dist.] Jan. 29, 2019, no pet.) (mem. op.) ("Neither Chapter 7A of the Code of Criminal Procedure nor Chapter 85 of the Family Code require that, before a protective order may be entered, a criminal conviction be obtained."). We therefore conclude that the trial court did not abuse its discretion in issuing a protective order pursuant to article 7A.[3]

We overrule appellant's first issue on appeal.

---

[3] Because article 7A supports the trial court's protective order, it is not necessary to address appellant's arguments that the trial court improperly issued the protective order pursuant to article 6.09 or Texas Family Code section 85.025. *See* TEX. R. APP. P. 47.1. Appellant also argues that the protective order effectively terminated his parental rights by denying him access or contact with his son for the rest of his life. Appellant provides no authority in support of his argument which is therefore waived. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). We note that article 7A.07 allows a person who is 17 years of age or older or a parent or guardian acting on behalf of a victim who is younger than 17 years of age to, at any time, file an application with the court to rescind the protective order. *See* TEX. CODE CRIM. PROC. art. 7A.07(b)(1).

**Assistance of Counsel**

In his second issue on appeal, appellant argues that the trial court violated his right to assistance of counsel. Specifically, appellant argues that the trial court proceeded to hear the case as a criminal trial and therefore appellant was entitled to assistance of counsel under the Sixth Amendment.[4]

A hearing on whether to grant a protective order is a civil proceeding. *See Amir–Sharif v. Hawkins*, 246 S.W.3d 267, 271 (Tex. App.—Dallas 2007, pet. dism'd w.o.j.) ("An application for a protective order is a civil matter."). The Sixth Amendment to the United States Constitution grants indigent criminal defendants the right to counsel, but only in criminal cases, not civil cases. *Culver v. Culver*, 360 S.W.3d 526, 535 n.17 (Tex. App.—Texarkana 2011, no pet.). Appellant has not cited any authority for the proposition that he has a constitutional or statutory right to counsel in a protective order case. *See* TEX. R. APP. P. 38.1(i); *Culver*, 360 S.W.3d at 535 (overruling appellant's claim to right to effective assistance of counsel in protective order case); *see also Turner v. Roberson*, No. 05–11–01272–CV, 2013 WL 2152636, at *4 (Tex. App.—Dallas May 17, 2013, no pet.) (mem. op.) (concluding that appellant did not have right to counsel in hearing of protective order). Because appellant has no constitutional or statutory right to

---

[4] U.S. CONSTITUTION, SIXTH AMENDMENT.

counsel in a protective-order case, the trial court did not violate appellant's right to assistance of counsel.

We overrule appellant's second issue on appeal.

## Sufficiency of the Evidence

In his third issue on appeal, appellant argues that the evidence is legally and factually insufficient to support a lifetime protective order.

When the trial court is the factfinder, such as when it determines whether to issue a protective order, we review the evidence supporting the protective order under both legal and factual sufficiency standards. *Shoemaker v. State for Prot. of C.L.*, 493 S.W.3d 710, 714–15 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citing *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000); *Vongontard v. Tippit*, 137 S.W.3d 109, 112 (Tex. App.—Houston [1st Dist.] 2004, no pet.)). In a legal sufficiency review, we view the evidence in the light most favorable to the finding and indulge every reasonable inference that supports the challenged finding, crediting favorable evidence if a reasonable fact finder could and disregarding contrary evidence unless a reasonable fact finder could not. *Shoemaker*, 493 S.W.3d at 715 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). "'If there is any evidence of probative force to support the finding, i.e., more than a mere scintilla, we will overrule the issue.'" *Id.* (quoting *City of Houston v. Hildebrandt*, 265 S.W.3d 22, 27 (Tex. App.—Houston [1st Dist.] 2008, pet.

12

denied)).  In reviewing for factual sufficiency, we consider all the evidence; we will set aside a finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.  *Id*. (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Kroger Co. v. Persley*, 261 S.W.3d 316, 319 (Tex. App.—Houston [1st Dist.] 2008, no pet.)).  "The factfinder is the exclusive judge of which facts have been proven, which witness is credible, and the weight to be given any witness's testimony."  *Id*.  Thus, when faced with conflicting evidence, the factfinder may believe one witness and disbelieve others.  *Id*. (citing *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986)).

A trial court must grant a protective order if it determines that "there are reasonable grounds to believe that the applicant is the victim of . . . stalking . . . ." TEX. CODE CRIM. PROC. art. 7A.03.  A person is a victim of stalking if, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at the victim: (1) the offender has committed an offense under the harassment statute, e.g., threatens, in a manner reasonably likely to alarm the person receiving the threat, to inflict bodily injury on the person or to commit a felony against the person with intent to harass, annoy, alarm abuse, torment, embarrass or offend; (2) the person is placed in fear of bodily injury or death or the person feels harassed, annoyed, alarmed, abused, tormented, embarrassed, or

13

offended; and (3) a reasonable person would have those same feelings. TEX. PENAL CODE. §§ 42.07, 42.072.

The evidence at trial included Christine's application for a protective order and her attached affidavit. In her affidavit, she stated that on or about July 11, 2017, appellant was convicted and transferred to TDCJ. She received a letter from him in October 2017, but she did not respond. She then stated that she would get letters about once a week and that he could not understand why she was not answering. She stated, "He made threats that he was going to send people to my home to watch me and find out who I was with and what I was doing. On average, he was sending letters about once or twice a week."

Around April 2018, Christine filed for divorce. She stated that his "letters got really crazy. He said he was going to get me fired from my job. He said he was going to take the boys to California.[5] He told me he was going to kill me. He told me he was going to make sure he was the only daddy the boys were going to know."

On May 30 and 31, 2018, Christine received a letter from appellant that said he was going to make her fly. According to Christine, appellant's statement was a reference to "a time he was going to throw me off the balcony of a hotel room."

---

[5]     Christine also had possession of appellant's son from a previous relationship.

14

Her affidavit further stated that from June 26 to November 16, 2018, she "made approximately 12 requests to TDCJ to stop all correspondence from [appellant]. I was receiving correspondence that was sent under other inmate's names."

She further stated,

> Appellant had written there was an old man who had been visiting him. He said the old man was going to facilitate his threats. He said he was going to send someone to keep an eye on us. He said he was going to send letters to my employer to get me fired. He told me if I did not contact him he was going to do everything in his power to ruin me. He told me if I did not go see him he was going to do all these things.
>
> On or about August 27, 2018—[appellant] sent another letter that he was never stopping. He said I should be put down like a rabid dog.
>
> On or about October 5, 2018—My pastor told me he received a letter from [appellant].
>
> On or about November 1, 2018—I was notified by my job that [appellant] had sent letters to every location of my employment in the City of Houston. In these letters, [appellant] accused me of doing drugs. He accused me of embezzling. He accused me of selling trade secrets. He accused me of many things to try and get me fired. Every location got this defamatory letter of me.
>
> I want a protective order against my ex-husband [appellant]. The reason I think there will be future violence is because there always is. I will not survive the next attack. I will always be afraid of him. I know that [appellant] is capable of killing me.
>
> I really feel that if [appellant] leaves prison, I will be in a plastic body bag because he will not stop.

15

In addition to the affidavit, Christine testified at the hearing that she has received 76 letters from appellant after he was sent to TDCJ, that different inmates had sent letters to get around mailing restrictions, that letters were sent to her job, her divorce attorney, and CPS. She testified that the letters made her feel uncomfortable, threatened, and continuously harassed. Detective Brownson read from appellant's letters, which included threatening language such as "I'm not going away, ever. I'm going to kill and die for what's mine. You and my children are mine. I don't care what it takes" and "I'm never going to go away, not ever. No matter what you do, I'm never going away." The evidence also showed that since appellant had been in custody, he was indicted for criminal solicitation of capital murder of Christine.

Accordingly, in reviewing the record under a legal-sufficiency standard, we conclude that there was more than a scintilla of evidence presented at the hearing to support the trial court's finding that Christine was the victim of appellant's stalking under article 42.072, and that Christine was therefore entitled to an article 7A protective order on that basis. Similarly, in reviewing this same uncontradicted evidence under a factual-sufficiency standard, we conclude that the trial court's finding that Christine was the victim of stalking was not "so against the great weight and preponderance of the evidence as to be clearly wrong and unjust."

We overrule appellant's third issue on appeal.

16

## Conclusion

We affirm the trial court's judgment. We overrule any pending motions as moot.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Kelly and Goodman.